**UNITED STATES of America,**
**Plaintiff,**

v.

**THIRTY–SEVEN (37) PHOTOGRAPHS,**
**Defendants,**

**Milton Luros, Claimant.**
**Civ. No. 69–2242–F.**

United States District Court
C. D. California.
Jan. 27, 1970.

Wm. Matthew Byrne, Jr., U. S. Atty., Frederick M. Brosio, Jr., Larry L. Dier,

Asst. U. S. Attys., Los Angeles, Cal., for plaintiff.

Stanley Fleishman, Hollywood, Cal., for defendants and claimant.

Before BARNES, Circuit Judge, and CURTIS and FERGUSON, District Judges.

## MEMORANDUM OPINION

FERGUSON, District Judge.

This is an action before a three-judge district court, convened pursuant to 28 U.S.C. §§ 2282 and 2284, to determine whether the government should be enjoined from enforcing 19 U.S.C. § 1305. That statute prohibits all persons from importing into the United States any obscene picture or book. It provides that when such an item appears at a customs office it shall be seized and held to await the judgment of a district court.

On October 24, 1969, Milton Luros returned to Los Angeles from a visit to Europe, arriving by plane. In his personal luggage he carried 37 photographs. In the course of an inspection, customs agents acting under authority of § 1305 seized the photographs as obscene. The agents referred the seizure to the United States Attorney, and on November 6, 1969, the Government filed its complaint seeking judicial authority to enforce the forfeiture of the photographs.

On November 14, 1969, the claimant filed an answer contending the photographs were not obscene. His counterclaim contends that § 1305 violates the First and Fifth Amendments, and seeks an injunction to restrain the government from enforcing the statute in relation to the 37 photographs.

The case presents a five-fold constitutional attack on § 1305, claiming that:

(1) It excludes from the United States photographs imported for use by adults in the privacy of their home.

(2) It excludes photographs which are to be distributed to adults only and in a manner which will not invade the sensitivities or privacy of anyone.

(3) It permits customs agents to seize and hold pictures without a time restraint.

(4) It permits a seizure prior to an adversary hearing.

(5) It is unconstitutionally vague.

The cornerstone of the attack, of course, is Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969). There the Supreme Court minimally held that the First Amendment prohibits the making of mere private possession of obscene material a crime. The lower courts now are faced with whether *Stanley* means more than that. See Karalexis v. Byrne, 306 F.Supp. 1363 (D.Mass., Nov. 28, 1969); Stein v. Batchelor, 300 F.Supp. 602 (N.D.Texas 1969).

The claimant requests this court to hold that *Stanley* means that the First Amendment forbids any restraint of obscenity unless (1) it falls in the hands of children, or (2) it intrudes upon the sensitivities or privacy of the general public. Without rejecting this argument, we decide the case based upon the narrowest construction of *Stanley*.

19 U.S.C. § 1305 reaches all obscene works. It prohibits an adult from importing an obscene book or picture for private reading or viewing, an activity which is constitutionally protected. As stated in *Stanley*, the right to read necessarily protects the right receive. The claimant does not contend, however, that he was merely going to bring the pictures into his own home. He admits that it is his intention to incorporate the pictures in a book for distribution.

The admission of claimant, that is, to distribute and not to view privately, does not prohibit his attack on invalidity of the statute. Freedman v. Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965), grants the claimant standing for it holds that in determining the validity of a statute in relation to the First Amendment, a court must determine what the statute can do. If the statute can violate the freedom of speech

and press, then it is invalid. This it clearly does. It prohibits a person who may constitutionally view pictures of the right to receive them. To quote from Justice Brennan's concurring opinion in Lamont v. Postmaster General, 381 U.S. 301, 308, 85 S.Ct. 1493, 1497, 14 L.Ed.2d 398 (1965), "[T]he right to receive publications is * * * a fundamental right. The dissemination of ideas can accomplish nothing if otherwise willing addressees are not free to receive and consider them. It would be a barren marketplace of ideas that had only sellers and no buyers."

The First Amendment cannot be construed to permit those who have funds for foreign travel to bring back constitutionally protected literature while prohibiting its access by the less affluent.

■ A second attack on the statute further involves Freedman v. Maryland, *supra*. Any system of censorship must contain, at the minimum, the following procedural safeguards if it is not to contravene the First and Fifth Amendments, (1) any restraint prior to judicial determination can be imposed only briefly, and (2) the censor in a specified brief period will go to court. The safeguards must be contained in the statute or by judicial rule. Section 1305 is a system of censorship by customs agents and is barren of safeguards.

In the context of this case, the claimant concedes that the government has moved rapidly for a judicial determination of the forfeiture. Yet from the date of the seizure to January 9, 1970, the date of the court hearing, 76 days had passed. All concede that under present statutory procedures it could not have been accomplished any sooner. Section 1305 does not prohibit customs agents from long delaying judicial determination. The First Amendment does not permit such discretion.

We are aware of United States v. One Carton Positive Motion Picture Film, 367 F.2d 889, 899 (2d Cir. 1966), which stated, "[S]pecific time limitations on administrative action are unnecessary and would serve only to inject inflexibility into the regulatory scheme * * *." That may or may not be true. We only note that such is contrary to the explicit holding in *Freedman, supra* 380 U.S. at 58–59, 85 S.Ct. at 739, "[T]he exhibitor must be assured, by statute or authoritative judicial construction, that the censor will, within a specified brief period * * go to court * * *." We must follow *Freedman*.

We decline to consider as unnecessary the remaining attacks on the constitutionality of § 1305, i. e., (1) vagueness and (2) the law set forth in Marcus v. Search Warrant, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961), and A Quantity of Copies of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964).

Pursuant to the provisions of Rule 52 of the Federal Rules of Civil Procedure, this memorandum opinion shall constitute the court's findings of fact and conclusions of law.

In accordance with the provisions of Rule 58, a judgment shall be separately prepared and entered as follows:

"1. Pursuant to 28 U.S.C. § 1253, this is an order in a civil action heard and determined by a district court of three judges granting a permanent injunction after notice and hearing.

"2. The United States and its agents are restrained and enjoined from enforcing the provisions of 19 U.S.C. § 1305 against the claimant Milton Luros, in relation to the 37 photographs seized by customs agents in Los Angeles, California, on October 24, 1969.

"3. The United States shall deliver said photographs to the claimant.

"4. 19 U.S.C. § 1305, on its face and as construed and applied, violates the rights guaranteed to the claimant under the free speech and press and due process provisions of the First and Fifth Amendments to the United States Constitution.

"5. The enforcement of this judgment shall be stayed for a period of 30

days, in order to preserve to the government its right of appeal."

BARNES, Circuit Judge, and CURTIS, District Judge, concur.