202 N.W.2d 632 (1972)
CITY OF ROCHESTER, Respondent,
v.
Robert O. CARLSON, Appellant.
No. 42510.
Supreme Court of Minnesota.
November 10, 1972.
*633 Stacker, Silverstein, Burke & Radsom, St. Paul, for appellant.
Warren Spannaus, Atty. Gen., St. Paul, Gerald H. Swanson, City Atty., Richard Bins, Asst. City Atty., Rochester, for respondent.
Considered and decided on the record by the court en banc.

OPINION
OTIS, Justice.
Defendant has been convicted in Olmsted County District Court of possessing with intent to sell three magazines found to be obscene in violation of Rochester City Ordinance, § 200.080. He was sentenced to serve a term of 90 days. The trial court held as a matter of law that the material was not obscene but submitted the issue of pandering to the jury, which found defendant guilty. In the absence of a finding of obscenity we hold that it was error to submit the issue of pandering, and reverse.
1. The three magazines on which the prosecution was based were entitled "Girl Friends," "Cinema Scorchers," and "Teen Nude." None of them was displayed in the windows of defendant's store, and none was visible from the street. One magazine is devoted to nude pictures of young men, one contains excerpts from moving pictures depicting nude men and women, and one deals with nude women characterized as lesbians. In none of the magazines is there any portrayal of heterosexual or homosexual intercourse or perversion.
In a long line of United States Supreme Court cases beginning with Sunshine Book Co. v. Summerfield, 355 U.S. 372, 78 S.Ct. 365, 2 L.Ed.2d 352 (1958), the portrayal *634 of nude persons has been held to enjoy First Amendment protection. In his charge to the jury, the court stated as a matter of law:
"* * * I am compelled to tell you that the materials and evidencewhile offensive to many tastesdo not qualify as hard-core pornography. * * *
* * * * * *
"Now, the Supreme Court of the United States and the law of the land has made it clearis clear that such material that are [sic] in evidence here is not obscene as it is constitutionally defined as long as the following two precautions are exercised by the purveyor: one, that there is no publication in a manner so obtuse [sic] [obtrusive] as to make it impossible for unwilling individuals to avoid exposure to the materials; and secondly, no pandering as I have described pandering."
The court's correct determination that the magazines were not obscene should have ended the matter. However, he went on to interpret Ginzburg v. United States, 383 U.S. 463, 86 S.Ct. 942, 16 L.Ed.2d 31 (1966), as permitting a conviction based on material not otherwise obscene if it was pandered within the rules set forth in Ginzburg. We do not so construe that case. Ginzburg simply held that in deciding the threshold question of whether material was obscene"* * * in close cases evidence of pandering may be probative with respect to the nature of the material in question and thus satisfy the Roth test." 383 U.S. 474, 86 S.Ct. 949, 16 L.Ed.2d 40. See, Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957). We do not understand Ginzburg to hold that, once material is found not to be obscene, it becomes obscene if pandered.
2. Had the magazines here in question been obscene, the issue of pandering would have been relevant under the rules adopted by the United States Supreme Court in Redrup v. New York, 386 U.S. 767, 87 S.Ct. 1414, 18 L.Ed.2d 515 (1967).[1] There, in reversing three obscenity convictions, the court stated (386 U.S. 769, 87 S.Ct. 1415, 18 L.Ed.2d 517):
"In none of the cases was there a claim that the statute in question reflected a specific and limited state concern for juveniles. * * * In none was there any suggestion of an assault upon individual privacy by publication in a manner so obtrusive as to make it impossible for an unwilling individual to avoid exposure to it. * * * And in none was there evidence of the sort of `pandering' which the Court found significant in Ginzburg v. United States, 383 U.S. 463 [, 86 S.Ct. 942, 16 L.Ed.2d 31 (1967)]."
In discussing the pandering issue in chambers with counsel, the court said he was limiting the consideration of pandering to the window displays and to an interview defendant had with a Rochester newspaper as to which defendant testified as follows:
"Q. Mr. Carlson, preliminary to your opening the bookstore in the City of Rochester, did you ever talk to the Rochester Post Bulletin about your opening up a store here?
"A. Yes, I did. Prior to my opening, you say?

*635 "Q. Yes.
"A. Yes.
"Q. Did you ever make a statement to the newspaper that Rochester had a need for a store such as this?
"A. I made that statement, but it was misconstrued. The meaning of it was misconstrued.
"Q. What did you mean when you made that statement?
"A. What I mean that there was a need, I meant thatkind of hard to explain. What I meant to say was I felt I could do adequate business, there would be enough customers in Rochester, that Rochester had grown population-wise to the extent it would warrant me putting a store of this nature in there and for it to be profitable. This was a telephone conversation and nothing person-to-person. This was done from Rochester to St. Paul via telephone, and it is, I think, quite easy to not quite get the right words in.
"Q. May I quote the story? It saysquoted attributable to you is'That Rochester is ready for this type of reading material,' is that an accurate quote?
"A. I meant ready in size, in population.
"Q. Not ready in mental attitude?
"A. Readymy feelings are they would be ready in mental attitude, yes. I think thatany city in the country is ready in mental attitude."
We hold as a matter of law that neither the window display nor defendant's interview constituted pandering within the meaning of the Ginzburg and Redrup cases. Neither the magazines here in question nor any other nude pictures were displayed in defendant's store window. It seems to be the position of the city that the pandering consisted of signs in the window which stated:
"ADULTS ONLY. YOU MUST BE 18 TO ENTER. YOU CANNOT BE ARRESTED WHILE SHOPPING OUR STORE OR WHEN LEAVING WITH A PURCHASE."
"NOW OPEN TO SERVE THE ADULT READER WITH . . . SEX ORIENTED BOOKS & MAGAZINES. . ."
In support of its contention that the window display constituted pandering, the city relies on Childs v. Oregon, 431 F.2d 272 (9 Cir. 1970). That decision was summarily reversed by the United States Supreme Court on the authority of Redrup in 401 U.S. 1006, 91 S.Ct. 1248, 28 L.Ed.2d 542 (1971). There defendant had been convicted of selling a paperback book entitled "Lesbian Roommate." It was openly displayed on racks in defendant's place of business, which was a retail tobacco and magazine store. The Oregon Supreme Court, in the original appeal of the conviction, State v. Childs, 252 Or. 91, 447 P.2d 304 (1968), certiorari denied, 394 U.S. 931, 89 S.Ct. 1198, 22 L.Ed.2d 460 (1969), found pandering, relying on Ginzburg, and the United States Court of Appeals agreed. The Supreme Court nevertheless reversed.
In Ginzburg the pandering consisted of mailing several million circulars which indiscriminately solicited subscriptions to obscene magazines. Ginzburg was a publisher and defendant Carlson is a retailer who advertised only in his store window. We find little similarity in the two cases.
Three decisions more nearly in point are Felton v. City of Pensacola, 200 So.2d 842 (Fla.App.1967), reversed, 390 U.S. 340, 88 S.Ct. 1098, 19 L.Ed.2d 1220 (1968); Grand Rapids City Attorney v. Bloss, 17 Mich.App. 318, 169 N.W.2d 367 (1969), reversed sub nom. Bloss v. Dykema, 398 U.S. 278, 90 S.Ct. 1727, 26 L.Ed.2d 230 (1970); State v. Cox, 3 Wash.App. 700, 477 P.2d 198 *636 (1970). In Felton, the Supreme Court of Florida sustained a conviction for selling nudist magazines on defendant's newsstands. The court, while recognizing that nude photographs are not in themselves obscene, held that the manner of distribution constituted pandering which warranted the conviction. The Supreme Court of the United States reversed, citing Redrup.
The Bloss conviction was based on defendant's advertising a bookstore by use of "trailers" on the screen of a theater and by other displays in the theater lobby. Defendant also placed material alleged to be obscene in the entrance alcove of his store. The Michigan Court of Appeals deemed important the trial court's finding that the magazines were prominently displayed on magazine racks and that their covers portrayed sex "in some lurid, morbid or enticing manner so as to invite further examination of its contents." 17 Mich.App. 333, 169 N.W.2d 373.[2] The United States Supreme Court reversed, citing only Redrup.
We concur in the views expressed by the Court of Appeals of Washington in State v. Cox, supra. There, too, a sign on defendant's store read, "Positively no one under 21 will be admitted." 3 Wash.App. 707, 477 P.2d 202. The court found no pandering and concluded (3 Wash.App. 708, 477 P.2d 203):
"* * * As we read Redrup, offensive, worthless, prurient material is not to be civilly suppressed or to be the essential element of a criminal conviction unless the material is clearly `hard-core' pornography or unless the accused possessor has conducted himself in a clearly proscribed manner.
* * * * *
"Without hesitation, we find Cox's magazines and films to be intended to appeal to a prurient interest in sex. We find them to be patently offensive to contemporary community standards. By dictionary definition and by common understanding, the material is clearly pornographic.
* * * * * *
"For the reasons stated, we hold that Cox's possession and selling of the seized material was constitutionally protected, and his conviction is reversed."
Only one decision squarely in point has come to our attention. State ex rel. Sensenbrenner v. Adult Book Store, 26 Ohio App.2d 183, 271 N.E.2d 13 (1971). The Ohio intermediate appellate court held that the sign "You must be 21 years of age to enter" was an appeal to the erotic interest of the store's customers. 26 Ohio App.2d 211, 271 N.E.2d 30. The court cited no authority except Ginzburg, and we find the decision not persuasive. Nor does the city cite any authority for treating as evidence of pandering defendant's testimony concerning his interview with a Rochester newspaper. We find it preposterous to equate defendant's statements that "Rochester is ready for this type of reading material" and that "Rochester ha[s] a need for a store such as this" with mailing several million circulars as was done in Ginzburg.
*637 Whatever may be our personal views with respect to the material we are here required to adjudicate, and as individuals, however offensive and revolting we may find it to be, under our judicial system we cannot abdicate our responsibility to apply the constitutional protections which have been enunciated by the United States Supreme Court simply because we find our task a disagreeable one. Accordingly, we hold (1) that the trial court was correct in holding the magazines which are the subject of this prosecution are not obscene and (2) that the evidence on which the jury relied was not adequate to support a finding of pandering. The conviction is therefore reversed.
Reversed.
KELLY, Justice (concurring specially).
I concur in the result and agree with the opinion of this court that when the trial court determined that the materials were not obscene that should have ended the matter. Similarly, when the opinion of this court reached the conclusion that material not obscene in and of itself does not become obscene if pandered, I believe we should have stopped there without attempting to decide the nonessential issue of pandering. Furthermore, I am not convinced that the trial court was in error in finding pandering. The defendant was catering to, and exploiting, the weakness of others, perhaps in a somewhat subtle way, but just as effectively and therefore just as wrongly as in the case of more blatant attempts.
KNUTSON, Chief Justice (concurring specially).
I agree with the concurring opinion of Mr. Justice Kelly. If the articles seized were not obscene, as the court has found and from which determination there has been no appeal, I fail to see how pandering, even if there was such, could make the articles obscene. Without obscenity there could be no violation.
NOTES
[1] Twenty-nine convictions for obscenity have now been summarily reversed by the United States Supreme Court on the authority of Redrup v. New York, 386 U.S. 767, 87 S.Ct. 1414, 18 L.Ed.2d 515 (1967). In addition to those set forth in the appendix to the dissent in State v. Hoyt, 286 Minn. 92, 113, 174 N.W.2d 700, 711 (1970); and State v. Carlson, 291 Minn. 386, 382, note 1, 192 N.W.2d 421, 429 (dissenting opinion) (1971), there may be added Burgin v. South Carolina, 404 U.S. 806, 92 S.Ct. 46, 30 L.Ed.2d 39 (1971); Wiener v. California, 404 U.S. 988, 92 S.Ct. 534, 30 L.Ed.2d 539 (1971); and Hartstein v. Missouri, 404 U.S. 988, 92 S.Ct. 531, 30 L.Ed.2d 539 (1971).
[2] The trial court made further findings as follows: "Generally speaking, most of the magazines, especially the editions of `Cover Girl' and `Exciting,' are dominated by photographs of nude or near-nude women in various sexual poses. These photographs often depict: The model on a bed or a bed is part of the picture; the model is in an enticing or lewd position such as a position of sexual intercourse; the public area is bare and such clothing as the women wear tends to accentuate the focus on the pubic area, i. e. silk stockings and garter belt; the model's pose accentuates the pubic area, i. e. the vagina is open; the model removes her clothing in a series of pictures suggestively; properties such as beds, stools, veils, chairs and clothing are used in such a way as to heighten prurient interest." Grand Rapids City Attorney v. Bloss, 17 Mich.App. 318, 333, 169 N.W.2d 367, 373 (1969).