[No. 1133-2.   Division Two.   November 14, 1974.]

THE CITY OF TACOMA, *Respondent*, v. ALEXANDER M. MUSHKIN, *Appellant*.

Victor V. Hoff, for appellant.

Robert R. Hamilton, City Attorney, and William J. Barker and F. H. Chapin, Jr., Assistants, for respondent.

PEARSON, C.J.—The defendant was convicted for willfully and knowingly showing an obscene movie entitled "Refinements in Love," in violation of Tacoma City Ordinance 8.32.020. On August 17, 1971, after a voluntary private showing to a municipal judge, the defendant was arrested and charged, and the film was seized. After being convicted in Municipal Court, the defendant was granted a trial de novo before a jury in Superior Court. On January 18, 1973, he was again convicted. The defendant was sentenced to 90 days in jail and fined $300.

The Tacoma ordinance defining obscene material[1] was patterned after the decisions in Roth v. United States, 354

---

[1]Tacoma City Ordinance 8.32.010 defined "obscene material" as "material that (1) has a dominant theme which, taken as a whole, appeals to the prurient interest in sex, (2) is patently offensive because it affronts contemporary community standards relating to description or representation of sexual matters, and (3) is utterly without redeeming social value."

The same section defined "obscene" as "foul, filthy, disgusting, offensive to chastity or modesty, expressing or presenting to the mind or view something that delicacy, purity and decency forbid to be exposed."

The jury which convicted the defendant was properly instructed as to the terms of the ordinance.

U.S. 476, 1 L. Ed. 2d 1498, 77 S. Ct. 1304 (1957), and *Memoirs v. Massachusetts*, 383 U.S. 413, 16 L. Ed. 2d 1, 86 S. Ct. 975 (1966). Pursuant to these decisions, three elements must coalesce in order to make a determination of obscenity:

> [I]t must be established that (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value.

*Memoirs v. Massachusetts, supra* at 418-19.

Several months after defendant's conviction in Superior Court, and nearly 2 years after his allegedly criminal conduct occurred, the Supreme Court, in *Miller v. California,* 413 U.S. 15, 37 L. Ed. 2d 419, 93 S. Ct. 2607, *rehearing denied,* 414 U.S. 881, 38 L. Ed. 2d 128, 94 S. Ct. 26 (1973) abandoned the *Roth-Memoirs* test for obscenity. The court noted that no formulation subsequent to *Roth* was agreed to by a majority of the court, and indicated that the *Memoirs* test was "unworkable." It commented that the prosecution's burden of proving that the material is " '*utterly* without redeeming social value' " is "a burden virtually impossible to discharge under our criminal standards of proof." *Miller v. California, supra* at 22. The court then formulated a revised tripartite test for obscenity:

> The basic guidelines for the trier of fact must be: (a) whether "the average person, applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest, . . . (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

*Miller v. California, supra* at 24.

It is generally agreed that the third phase of the *Miller* formulation offers a less permissive test for obscen-

ity than existed under the *Roth-Memoirs* rules. *See, e.g., Hamling v. United States,* 418 U.S. 87, 41 L. Ed. 2d 590, 94 S. Ct. 2887 (1974). *State v. Timmons,* 12 Wn. App. 48, 527 P.2d 1399 (1974). On the other hand, *Miller* is more stringent in that it requires applicable state law to specifically define the proscribed sexual conduct. We are required as a reviewing court to make an independent constitutional determination of the obscenity of the film in question here. *Jacobellis v. Ohio,* 378 U.S. 184, 12 L. Ed. 2d 793, 84 S. Ct. 1676 (1964). But first we must determine whether the *Memoirs* formula or the *Miller* guidelines, or both, should be applied to this case on appellate review.

■ We believe that this film should be evaluated under both the *Miller* and *Memoirs* tests, and we are impressed by the reasoning found in *United States v. Palladino,* 490 F.2d 499 (1st Cir. 1974) and *United States v. Thevis,* 484 F.2d 1149 (5th Cir. 1973). In *Palladino* the court explained that:

> The defendants are caught in a period of transition, their prosecutions having taken place before the *Miller* decisions. They cannot fairly be subjected to penalties for violation of rules established after their actions.

*United States v. Palladino, supra* at 500. And in *Thevis* it was concluded that:

> [W]e do believe it to be our duty, under the *Miller* remands and in view of the care with which the judiciary must protect First Amendment rights, to assure that no one is convicted under earlier extant standards if they are more restrictive of pornography than those in *Miller.* Thus when we make, as we are required to do, an "independent constitutional judgment on the facts of the case as to whether the material is constitutionally protected", [Citations omitted.] we shall consider both the *Miller* and *Memoirs* definitions of obscenity. Any count based on a magazine which is not obscene under both of these standards is due to be dismissed.

*United States v. Thevis, supra* at 1155. In other words, *Miller* should be applied retroactively for the benefit of the

defendant, but he should not be burdened by its being the sole standard for constitutional review.[2]

Turning now to the film in question, "Refinements in Love," we do not believe that the third element of the *Roth-Memoirs* test has been constitutionally satisfied; we cannot say unequivocally that the movie is "utterly without redeeming social value."

The theme of "Refinements in Love" was ostensibly the changing perspective of society towards sex. It was designed, at least in part, to demythologize sexual attitudes. Documentary support was provided for this thesis. Liberalized thinking on the subject was applauded as being socially desirable. Openness and candor about sex were recommended. It was suggested that sex be viewed as a pleasant pastime and that the attitudes generated by our puritanical and victorian heritage be discarded.

Approximately half of the film was devoid of explicit sex

---

[2]Our conclusion is consistent with recent decisions of both the Supreme Court of the United States and the Supreme Court of this state.

In *Hamling v. United States*, 418 U.S. 87, 41 L. Ed. 2d 590, 94 S. Ct. 2887 (1974) the court emphasized that the *Miller* decision did not make pre-*Miller* convictions which utilized the *Roth-Memoirs* test unconstitutional, and that the *Memoirs* formula was abandoned not because of its vagueness, but rather because of the "impossible burden." In *Miller* the conviction was remanded for reconsideration under the new ruling, but the court noted that the *Memoirs* test was "correctly regarded at the time of trial as limiting state prosecution under controlling case law." *Miller v. California*, 413 U.S. 15, 30, 37 L. Ed. 2d 419, 93 S. Ct. 2607 (1973).

The court in *Hamling* found that the defendant should be accorded any benefits which he might receive under the *Miller* guidelines, and went on to review the obscenity vel non of the material in question under both the *Roth-Memoirs* and *Miller* standards. In the companion case to *Hamling*, *Jenkins v. Georgia*, 418 U.S. 153, 41 L. Ed. 2d 642, 94 S. Ct. 2750 (1974), the court found that the movie "Carnal Knowledge" simply did not depict sexual conduct in a patently offensive way; the second element of *Miller* was missing. Thus there was no reason for the court to undertake an independent review of the film under the *Roth-Memoirs* standards.

A recent Washington decision, *State v. J-R Distribs., Inc.*, 82 Wn.2d 584, 512 P.2d 1049 (1973) also involved convictions during the transitory period between *Memoirs* and *Miller*. The court reevaluated the

scenes and this portion was wholly unobjectionable from a legal standpoint. The film contained lengthy interviews with a producer of sexually oriented movies, a psychiatrist, and an attorney. The interview with the producer emphasized the artistic merit of such films; the psychiatrist supported the movie's theme from a psychological, sociological and medical standpoint; and the attorney expressed the opinion that the law should keep abreast of the changing attitudes of society towards sex. The movie contained some humor and a little medical advice. Appropriate background music was played throughout the film.

Interspersed throughout were numerous explicit sexual scenes designed to illustrate points being made by the narrator and interviewees. These scenes were approximately 5 to 10 minutes in duration and the viewer's imagination was not challenged by the camera. Couples were portrayed engaging in sexual intercourse, as well as in cunnilingus and fellatio. There were a number of closeups of sexual organs. Many of the scenes were of young couples, fond of one another, engaged in normal sexual activity. Other scenes could not be so characterized. For example, a "doctor" was shown performing the sexual act on a patient (with her prior consent) whom he had hypnotized. All of the scenes, save one, involved heterosexual twosomes. Many of these scenes did little to enhance the narrative intellectually. However, other scenes rather successfully illustrated the preceding or accompanying commentary. For example, one segment pointed out that a poor sexual relationship between spouses makes for a bad marriage. A visual illustration was provided showing an inconsiderate husband having intercourse with his wife, wholly without regard to her pleasure. The marriage would have broken up, pointed out the narrator, had not the couple obtained professional counseling. In addition, the film suggested that cigarette smoking may have a negative effect on one's sexual activ-

---

material in light of *Miller* and without elaborating, reviewed the materials under the *Roth-Memoirs* standards as well.

ity, advice illustrated by a partner suffering from the agonies of nicotine addiction while making love.

The lengthy interviews with the producer, psychiatrist and lawyer were no doubt included, at least in part, for the purpose of establishing the artistic, scientific, educational, and political value of the film. These portions of the movie, standing alone, would clearly merit constitutional protection. The combination of uncensurable material with explicit sexual scenes was doubtless calculated to establish the film's social value.

In *State v. J-R Distribs., Inc.*, 82 Wn.2d 584, 512 P.2d 1049 (1973) the court dealt with a situation in which obscene matter accompanied uncensorable material by adopting a test based on the decision in *Kois v. Wisconsin*, 408 U.S. 229, 33 L. Ed. 2d 312, 92 S. Ct. 2245 (1972). Such material will be protected by the First Amendment under the *Roth-Memoirs* test if the accompanying objectionable scenes are "relevant to the theme" of the movie, have a "reasonable and rational relationship . . . [to] the text . . ." and the text is not "a mere vehicle for the publication" of the censurable matter.

We believe that significant portions of the movie "Refinements in Love" satisfy this test. We have reviewed above several scenes which we found to be relevant to the theme of the movie itself, and rationally related to the accompanying commentary. Other explicit sexual scenes depicted in this film were perhaps only marginally related. However, we believe that in cases of doubt, the issue should be resolved in favor of First Amendment protection. We cannot say with any certainty that the constitutionally protected portions of this movie were a "mere vehicle for the publication" of the otherwise unprotected segments. Further, we believe that this film, taken as a whole, had some redeeming social value. There is no question that perhaps half of the movie could appeal to one's prurient interest in sex, and that portion of the movie could be characterized as "patently offensive" in the manner of representing explicit sexual matters. But, as stated in *United States v. Thevis*,

*supra* at 1157, "[t]he inclusion of this [protected] matter in significant proportions precludes a finding, in our judgment, that the [material in question is] 'utterly without redeeming social value.' " *See State v. Cox*, 3 Wn. App. 700, 477 P.2d 198 (1970).

In our view, the constitutional issue in this case is a close one, due to the dominance of the explicit sexual portrayals. Standing alone these scenes are obscene. We are prepared, but not required,[3] to accept the opinion of the expert, a physician called by the State, that the film has no medical or scientific value. Even so, the ideas contained in the non-objectionable portions of the film, although we might personally disagree with them, are ideas or views which the First Amendment protects.

We note, from an artistic or literary standpoint, the expert called by the State[4] did not conclude that the film was "utterly without literary or artistic value." He concluded, "I didn't feel there was anything substantial in the film in terms of artistic work." Even were we to agree with that opinion, we are not prepared to further conclude that the ideas expressed in the film are "utterly" without value. The State's expert was not willing to go that far, and neither are we.

We are mindful that a jury found otherwise in this case. But we bear in mind the admonishment of the court in *Jenkins v. Georgia*, 418 U.S. 153, 41 L. Ed. 2d 642, 94 S. Ct. 2750 (1974) that the *Miller* decision did not give juries "unbridled discretion" on obscenity issues. Furthermore, independent judicial review is the constitutional means for limiting that discretion. *Jenkins v. Georgia, supra.*

We advance one other reason for our decision. In *Miller v. California, supra,* the United States Supreme Court discussed the need for changing the standards relating to obscenity by stating that the *Roth-Memoirs* test was "un-

---

[3]Expert testimony is not required to establish the State's case. *United States v. Thevis*, 484 F.2d 1149 (5th Cir. 1973).

[4]The expert was a professor of speech, drama and movie production at the University of Puget Sound.

workable" with reference to its third requirement. Proof that the subject matter of the prosecution is " '*utterly* without redeeming social value,' " is, the court said at page 22, a "burden virtually impossible to discharge under our criminal standards of proof."

In the context of that conclusion, with which we agree, it is conceivable that a movie proprietor or an attorney giving advice to such a proprietor would consider "Refinements in Love" constitutionally acceptable under the permissive third standard of *Roth-Memoirs*. Under those circumstances we are most reluctant that criminal consequences should attach where guilt or innocence turns on so "unworkable" a standard as "utterly without redeeming social value." This is particularly so where a significant portion of the film is not devoted to hard core pornography, but rather to matters and views deserving of First Amendment protection.

Since we have decided that "Refinements in Love" fails to satisfy the *Roth-Memoirs* constitutional test for obscenity, we need not evaluate the film under the *Miller* guidelines. However, we offer no guaranty to defendant that the less permissive standards of *Miller* will constitutionally protect him in the future. We also need not decide the defendant's other assignments of error.

Reversed and remanded with instructions to dismiss the information.

ARMSTRONG, J., concurs.

PETRIE, J. (dissenting)—I am compelled to dissent from the opinion of the majority. I viewed an indisputably obscene film appraised under the *Miller* guidelines (*Miller v. California*, 413 U.S. 15, 37 L. Ed. 2d 419, 93 S. Ct. 2607 (1973)) or under the *Memoirs* guidelines (*Memoirs v. Massachusetts*, 383 U.S. 413, 16 L. Ed. 2d 1, 86 S. Ct. 975 (1966)).

I do agree with my associates that in terms of running time approximately one-half of the film contains material which would be considered constitutionally protected; the

other one-half of the running time is clearly a presentation of "feast-your-eyes-on-this" type of hard core pornography, in color, with maximum exposure in detail to genitalia accompanied by titillating music augmenting the actors' gyrations, trundling, moaning, groaning and sighing. I have no hesitancy in asserting that the constitutionally protected segments of the film, interspersed somewhat haphazardly throughout its length, constitute a mere facade to mask its true purpose—the presentation of hard core pornographic "entertainment." The viewer, for example, is advised of the food value contained in the average male sperm. Presumably, this enhances the viewer's scientific knowledge. Then several scenes follow demonstrating in nauseating detail how the viewer may ingest these nutritional elements into his system.

Now let us turn to the "redeeming social value" of this film. The film was intended to be shown as a unit. Hence, its social value, if any, must be measured in terms of its whole content—not its separate parts. Far from having any redemptive social worth, I found the film as a whole to be despicably degrading and not worthy of any social importance.

However, prescinding entirely from *my* view that the film is obscene under both *Miller* and *Memoirs,* the jury in the case at bench was instructed consistently with *Memoirs* formulation of obscenity. The jury found Mr. Mushkin guilty of the crime charged. Our task on review is to ascertain simply whether or not the *jury could* constitutionally find the film obscene under the *Memoirs* test—if that test is applied; *Hamling v. United States,* 418 U.S. 87, 41 L. Ed. 2d 590, 94 S. Ct. 2887 (1974); and under the *Miller* test—if that test is to be applied; *Jenkins v. Georgia,* 418 U.S. 153, 41 L. Ed. 2d 642, 94 S. Ct. 2750 (1974).

The test, therefore, is not strictly whether or not *we* find the film obscene, but whether or not, in our view, the jury can reasonably so find it. Obviously, also, just because the jury does find it obscene is not sufficient indication that it is constitutionally obscene. *Jenkins v. Georgia, supra.* The

66

test to be applied is whether or not we find the evidence arguably establishes the constitutional fact of obscenity under the appropriate guidelines. Clearly, I would so find.

Furthermore, I find no merit to Mr. Mushkin's other assignments of error. Accordingly, I would affirm the conviction.