[No. 1225-2.   Division Two.   October 29, 1974.]

THE STATE OF WASHINGTON, *Respondent*, v. MIKE J.
TIMMONS, *Appellant*.

*Victor V. Hoff,* for appellant.

*Curtis Janhunen, Prosecuting Attorney,* and *George N.
Bowden, Deputy,* for respondent.

ARMSTRONG, J.—The major issue raised on this appeal is one of first impression in this state. It requires a determination whether a seller of allegedly obscene materials may be convicted on the basis of a test of obscenity not in existence at the time the sale occurred. We hold that he cannot.

Mike J. Timmons was the owner of The Book Carnival in Aberdeen, Washington. On six different dates between April 24, 1973, and June 4, 1973, he sold eight motion picture films to plainclothes police officers and a civilian police employee. In each instance, he either described the film or pointed it out in a catalog which described it. On June 7, 1973, he was charged with eight counts of selling obscene motion picture films in violation of RCW 9.68.010.[1]

At trial on August 27, 1973, the judge instructed the jury (instruction No. 6) that in order for a motion picture to be obscene, it must be established:

1. That the average person, applying contemporary community standards, would find the film, taken as a whole, appeals to the prurient interest. In this regard, a film "appeals to the prurient interest" if it produces an itching or craving for the lewd, licentious and lascivious in sexual matters.

2. That the film depicts or describes sexual conduct in a patently offensive way.

3. That the film, taken as a whole, lacks serious literary, artistic, political, or scientific value.

The jury found Timmons guilty and he was fined $2,100 and sentenced to 1 year in jail, which was suspended.

Instruction No. 6 substantially reflected the new obscenity test created by the United States Supreme Court in

---

[1] RCW 9.68.010 provides in relevant part:

"Every person who—

"(1) Having knowledge of the contents thereof shall exhibit, sell, distribute, display for sale or distribution, or having knowledge of the contents thereof shall have in his possession with the intent to sell or distribute any book, magazine, pamphlet, comic book, newspaper, writing, photograph, motion picture film, phonograph record, tape or wire recording, picture, drawing, figure, image, or any object or thing which is obscene; . . .

". . .

"Shall be guilty of a gross misdemeanor."

*Miller v. California*, 413 U.S. 15, 24, 37 L. Ed. 2d 419, 431, 93 S. Ct. 2607 (1973),[2] which was decided on June 21, 1973—after Timmons sold the films, but before his trial.

In *Miller* the Supreme Court reaffirmed the rule that obscenity is not protected by the First Amendment and may be subject to state regulation. The definition of obscenity set forth in *Roth v. United States*, 354 U.S. 476, 1 L. Ed. 2d 1498, 77 S. Ct. 1304 (1957), and embellished by *Memoirs v. Massachusetts*, 383 U.S. 413, 16 L. Ed. 2d 1, 86 S. Ct. 975 (1966), was rejected,[3] and the standard by which obscenity is to be judged was altered in two significant ways. First, the requirement that the material "taken as a whole, lacks serious literary, artistic, political, or scientific value" was substituted for the *Memoirs* requirement that the work be "utterly without redeeming social value," which the court found had proven to be unworkable and unrealistic. It is generally recognized that the "serious value" element considerably eases the prosecution's burden. *Hamling v. United States*, 418 U.S. 87, 41 L. Ed. 2d 590, 94 S. Ct. 2887, 2907 (1974); *United States v. Lang*, 361 F. Supp. 380 (C.D. Cal. 1973).

Second, the *Miller* court held that the depictions of sexual conduct which are prohibited must be specifically de-

---

[2]The test is:

"The basic guidelines for the trier of fact must be: (a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest, . . . (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." (Citations omitted.) *Miller v. California*, 413 U.S. 15, 24, 37 L. Ed. 2d 419, 431, 93 S. Ct. 2607, 2615 (1973). Instruction No. 6 did not state that the statute must specifically define the depictions of sex which are prohibited.

[3]The court in *Memoirs v. Massachusetts*, 383 U.S. 413, 418, 16 L. Ed. 2d 1, 5-6, 86 S. Ct. 975, 977 (1966) summarized the test as follows: "[I]t must be established that (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value."

fined by applicable state law, as enacted or authoritatively construed. Regulation of obscene materials must be carefully limited to give an individual adequate notice that his conduct may subject him to prosecution. After Timmons sold the films, RCW 9.68.010 was authoritatively construed in conformance with *Miller*. *State v. J-R Distribs., Inc.*, 82 Wn.2d 584, 512 P.2d 1049 (1973), *cert. denied*, 418 U.S. 949, 41 L. Ed. 2d 1166, 94 S. Ct. 3217 (1974). Prior to *J-R Distributors*, the *Roth-Memoirs* test had been judicially incorporated into RCW 9.68.010. *State v. Rabe*, 79 Wn.2d 254, 484 P.2d 917 (1971), *rev'd on other grounds sub nom.*, *Rabe v. Washington*, 405 U.S. 313, 31 L. Ed. 2d 258, 92 S. Ct. 993 (1972).

Subsequently, in *Jenkins v. Georgia*, 418 U.S. 153, 41 L. Ed. 2d 642, 94 S. Ct. 2750 (1974) the Supreme Court clarified the appellate court's role in obscenity cases without altering the *Miller* test in any way. It stated that the jury does not have "unbridled discretion" in determining whether material is obscene. Rather, this determination is reviewable through appellate consideration of the obscenity of the material.

Timmons' major contention on appeal is that he was denied due process of law when the jury was instructed to judge the obscenity of the films by the *Miller* definition which was promulgated after the sale. We agree and find support in both recent obscenity cases and principles of due process.

At the outset, we feel it is important to enunciate again the principles which govern our appellate review in obscenity cases. It is true that we may independently review allegedly obscene materials. *Jenkins v. Georgia, supra*; *Miller v. California, supra*; *Kois v. Wisconsin*, 408 U.S. 229, 33 L. Ed. 2d 312, 92 S. Ct. 2245 (1972). We do so, however, to determine whether the material is obscene in the constitutional sense. That is, does the work fit within the definition and examples of obscenity which the Supreme Court has fashioned in order to prevent repression

of material which is protected by the First Amendment? Thus, on review of the obscenity of material in the constitutional sense, an appellate court may take account of judicial decisions handed down while the case is on direct appeal. *Hamling v. United States, supra.*

The state is prohibited from regulating material which is protected by the First Amendment, but may proscribe that which is obscene in the constitutional sense. Therefore, if the material is obscene in the constitutional sense, the question arises whether the state has chosen to prohibit or not prohibit the particular material in issue. This is a separate and distinct problem from whether the material is constitutionally protected. Whether the statutory prohibition has been violated because the limits prescribed have been exceeded is within the province of the trier of fact. *Tacoma v. Lewis,* 9 Wn. App. 421, 513 P.2d 85 (1973).

In the case at bar, it was the jury's responsibility to determine whether RCW 9.68.010 was violated. At the time of the allegedly criminal acts, the word "obscene" in RCW 9.68.010 had been construed to incorporate the *Roth-Memoirs* test. *State v. Rabe, supra.* Thus, Timmons violated the statute only if the films as a whole appealed to the prurient interest in sex, were patently offensive and were utterly without redeeming social value. The jury, however, was instructed to judge the criminality of his conduct by the *Miller* test, as incorporated into RCW 9.68.010 by the court in *J-R Distributors* after the films were sold.

■■ We hold that Timmons was denied due process when the jury was instructed on the basis of the *Miller* and *J-R Distributors* test of obscenity. A fundamental concept of due process is that citizens are entitled to fair warning that particular conduct is proscribed before they can be held criminally liable for engaging in it. *United States v. Harriss,* 347 U.S. 612, 98 L. Ed. 989, 74 S. Ct. 808 (1954). This principle is the basis for the prohibition of ex post facto, overbroad and vague legislation. It will also operate to protect individuals from some retroactive applications of

judicial constructions. *Bouie v. Columbia*, 378 U.S. 347, 12 L. Ed. 2d 894, 84 S. Ct. 1697 (1964). In *Bouie* the defendants remained on property after being asked to leave. They were convicted under a narrowly drawn state statute prohibiting entry onto land after notice not to enter. The South Carolina Supreme Court construed the statute to encompass the defendants' conduct and applied the construction to them. The United States Supreme Court reversed, holding that due process had been violated by the retroactive application of the judicial construction. It found that such an application was as great a denial of fair warning that the conduct is prohibited as an ex post facto law.

It is true that not every new judicial construction will be given retroactive effect. In dealing with the facts before it, the court stated:

> If a judicial construction of a criminal statute is "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue," it must not be given retroactive effect.

*Bouie v. Columbia, supra* at 354 quoting J. Hall, *General Principles of Criminal Law*, 58-59 (2d ed. 1960). Nevertheless, the principle enunciated in *Bouie* comes into play in the case at bar. The Supreme Court has fashioned a constitutional rule which has import far beyond the *Bouie* facts themselves. Moreover, we disagree with the State's contention that *Bouie* is not applicable to this case because Timmons had fair warning of the conduct prohibited by RCW 9.68.010. The *Miller* case was "unexpected"—Timmons cannot be charged with anticipating the creation of a new obscenity test. Furthermore, the new test is not a mere revision of the old. The requirement that the work as a whole be without "serious literary, artistic, political, or scientific value" will bring into the ambit of obscenity many materials protected under the "utterly without redeeming social value" rule, which was the test of obscenity incorporated into RCW 9.68.010 by our courts when the films in question were sold. In fact, it can fairly be said that

the court in *J-R Distributors* substantially altered the authoritative interpretation of the statute.

The State cites *Hamling v. United States, supra,* in support of its position that the requirements of due process were met. There the Supreme Court stated that it would utilize *Miller* in cases which were on direct appeal when *Miller* was decided. *Hamling,* however, is not determinative here. The question in the case at bar involves the application of *Miller* to the trier of fact's determination whether the statute was violated. The court in *Hamling,* on the other hand, merely gave the defendant the benefit of *Miller* in making its decision whether the material was constitutionally protected—a completely different consideration as we noted above.

The State further argues that the *Miller* court itself disposed of the cases before it by retroactively applying its new test to them. The *Miller* court remanded for "proceedings not inconsistent with this opinion." *Miller v. California,* 413 U.S. 15, 48, 37 L. Ed. 2d 419, 93 S. Ct. 2607 (1973). This language lends itself more readily to an interpretation other than that urged by the State. As it later held in *Hamling* and *Jenkins,* on appeal, the defendant is entitled to the benefit of the *Miller* requirement that the prohibited conduct be specifically prohibited by applicable state law. This was the purpose of the above language. *Accord, United States v. Palladino,* 490 F.2d 499 (1st Cir. 1974); *United States v. Thevis,* 484 F.2d 1149 (5th Cir. 1973). The *Miller* court did not say that a trial with *Miller* instructions was required and we find no language implying this.

Courts in other jurisdictions have also concluded that in a case where the allegedly criminal act preceded both *Miller* and any authoritative construction incorporating the specificity required by *Miller,* due process would be violated if the jury were instructed on the *Miller* test. *United States v. Lang,* 361 F. Supp. 380 (C.D. Cal. 1973); *Rhodes v. State,* 283 So. 2d 351 (Fla. 1973); *State v. Harding,* .......... N.H. .........., 320 A. 2d 646 (1974). *Contra, United States v. Marks,* 364 F. Supp. 1022 (E.D. Ky. 1973); *State ex rel.*

*Chobot v. Circuit Court,* 61 Wis. 2d 354, 212 N.W.2d 690 (1973).[4]

The State urges us to hold that the giving of the wrong instruction was harmless error. We cannot do so, as our discussion of due process above indicates. The two-step process for appellate review in obscenity cases requires that the defendant be given a fair trial on the issue whether he has violated the statute. The right to a fair trial includes the right to have the jury provided with the definitions judicially bestowed upon words in the statute at the time the act was committed.[5] We may not speculate what a jury would decide if instructed to judge the obscenity of the material in light of the *Roth-Memoirs* test, a substantially different definition of obscenity than the one they were given.

We have reviewed the films and determined that they are clearly hard-core pornography not constitutionally protected under either test. Each film was about 15 minutes long, in color and without sound. A variety of sexual conduct was depicted. Most of the films portrayed more than two persons engaged in sex at the same time and one was

---

[4]Our decision today is not contrary to *State v. J-R Distribs., Inc.*, 82 Wn.2d 584, 512 P.2d 1049 (1973), *cert. denied*, 418 U.S. 949, 41 L. Ed. 2d 1166, 94 S. Ct. 3217 (1974). There, our Supreme Court was faced with the issue of what test of obscenity to apply on review of a case, where, after oral argument before it, a new test was fashioned by the United States Supreme Court. The court applied both the *Miller* and *Roth-Memoirs* tests and incorporated the *Miller* test into RCW 9.68.010. Thus, the issue before it was the obscenity of the material in the constitutional sense. On the other hand, the question before us is whether the jury was properly instructed before making its determination whether the statute had been violated.

[5]Timmons argues that at the time of trial there was no test of obscenity which could be given; the *Miller v. California*, 413 U.S. 15, 37 L. Ed. 2d 419, 93 S. Ct. 2607 (1973) test was not in existence when the films were sold, and *Roth-Memoirs* had been thrown out by the *Miller* court by the time of trial. This argument is founded upon a misconception of the *Miller* court's treatment of *Roth-Memoirs*. It merely rejected the test as unworkable, and then stated that *Roth-Memoirs* had been correctly applied below. *Accord, United States v. Thevis*, 484 F.2d 1149 (5th Cir. 1973).

of an "orgy" with at least eight persons in attendance. The sexual conduct depicted included masturbation, fellatio, cunnilingus, intercourse and use of mechanical devices in both heterosexual and homosexual groups. The camera often focused in on genitals for extended periods of time.

We would have no hesitation in saying that the representations of the sexual acts and lewd exhibitions of the genitals were patently offensive. *Miller v. California, supra* at 25. Nor do we find these films contained any modicum of social value. However, regardless of our view of the obscenity of the material in the constitutional sense, Timmons is entitled to a determination by the trier of facts under the *Roth-Memoirs* test.

In light of our disposition of the case, it is not necessary to discuss Timmons' other assignments of error.

Reversed and remanded for a new trial.

PEARSON, C.J., and PETRIE, J., concur.

Petition for rehearing denied December 12, 1974.

Review denied by Supreme Court March 3, 1975.