THE B & A COMPANY, t/a The Edgewood Book Store
*v.* STATE OF MARYLAND

[No. 386, September Term, 1974.]

*Decided January 20, 1975.*

The cause was argued before Moylan, Powers and Lowe, JJ.

*Michael E. Kaminkow* for appellant.

*Bernard A. Raum, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General, Edwin H.*

W. *Harlan, Jr., State's Attorney for Harford County,* and *John A. Goodman, Assistant State's Attorney for Harford County,* on the brief, for appellee.

LOWE, J., delivered the opinion of the Court.

In *Ebert v. Md. St. Bd. of Censors,* 19 Md. App. 300, 302-303, Chief Judge Orth viewed with relief the long awaited Supreme Court effort, *Miller v. California,* 413 U. S. 15, to thin the tangled thicket of obscenity regulation which had grown up around the "Roth-Memoirs test."[1] The most troublesome aspect of the *Memoirs* refinement of *Roth* was the requirement that the state prove the alleged obscene matter to be "utterly without redeeming social value." Judge Orth called that test "unworkable" and "not the law of the land because it did not represent a majority of the court." *Ebert,* 19 Md. App. at 303. The overwhelming burden placed on the prosecution when required "to prove a negative" is self-evident.

In *Miller,* using the term "guidelines" as opposed to "test," five members of the Court reformulated the obscenity criteria, and thereby substantially lessened the prosecutorial burden. The jury must now consider:

"(a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest . . .;

(b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and

---

1. Roth v. United States, 354 U. S. 476; Memoirs v. Massachusetts, 383 U. S. 418. Required was the coalescence of three elements:

"(a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex;

(b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and

(c) the matter is utterly without redeeming social value." *Memoirs,* at 418.

(c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value."
413 U. S. at 24.

When the present case was tried before Judge Harry Dyer, presiding over a jury in the Circuit Court for Harford County, the State's Attorney, confident of a conviction under either the "impossible" *Roth-Memoirs* test or the easier to prove *Miller* guidelines, chose to err if at all on the side of prudence, by asking the court to instruct the jury under the *Roth-Memoirs* test.

The offenses occurred October 17th and November 1st of 1972, prior to *Miller* which was decided June 28, 1973. The case was tried, however, after *Miller*, beginning November 13, 1973. Appellant applies only one edge of the *Miller* sword. It argues that *Hamling v. United States*, 418 U. S. 87, 41 L.Ed.2d 590 entitles it to all of the benefits of *Miller*, but that retroactive enforcement of *Miller* would deny it due process, citing *Bouie v. City of Columbia*, 378 U. S. 347 for the lack of adequate notice principle.

Inasmuch as appellant's conviction was not final in the sense that it had not exhausted its channels of direct review when the Supreme Court opinion came down, we agree that *Miller's* benefits are due. *Hamling, supra,* 41 L.Ed.2d at 611. Regarding the adequate notice argument, appellant concedes there was no attempt to convict it retroactively under the *Miller* standard.

## The *Roth-Memoirs* Instruction

We disagree, however, with appellant's further contention that in *Miller* the Supreme Court declared a moratorium between June 21, 1973 (the date *Miller* was decided) and such time as the Legislature shall by statute, or the appellate courts by judicial interpretation proscribe that which was the subject of appellant's conviction.[2] This argument hinges upon but two sentences of *Miller*, 413 U. S. at 27:

2. The evidence introduced included a silent color film, two magazines depicting sexual relations and perversions and two colloquially referred to as bondage (or sado-masochistic) magazines. Appellant claims no statute or judicial interpretation proscribes depictions of the latter conduct.

"Under the holding announced today, no one will be subject to prosecution for the sale or exposure of obscene materials unless these materials depict or describe patently offensive 'hard-core' sexual conduct specifically defined by regulating state law, as written or construed. We are satisfied that these specific prerequisites will provide fair notice to a dealer in such materials that his public and commercial activities may bring prosecution."

Three observations strongly militate against any finding that the Supreme Court meant these words to provide a period of pornographic freedom. First, *Miller's* express purpose in redefining obscenity was to ease the all but impossible prosecutorial burden under the *Memoirs'* restriction on *Roth*, and *a fortiori* increase the probability of successful prosecution. Second, Chief Justice Burger added a footnote to the sentences excerpted by appellant, *Miller*, *supra*, at n. 10, in which he quotes Justice Brennan's discussion in *Roth* of the due process-engendered specificity requirement of obscenity laws. That to us clearly indicates that the above-quoted sentences serve only to reiterate the now-familiar due process theme, rather than to invite the States to engage in prospective formulation of obscenity statutes. Third, and perhaps most telling, is the material in n. 6, *Miller*, *supra*, at 24. After alluding to Oregon and Hawaii as states with sufficiently specific obscenity statutes, the Chief Justice wrote:

"We do not hold ... that all States other than Oregon must now enact new obscenity statutes. Other existing state statutes, as construed heretofore or hereafter, may well be adequate."

We conclude that the *Miller* court did not invalidate preexisting obscenity standards; on the contrary, it superimposed a test which lessens the prosecutor's evidentiary burden and thus will in all likelihood result in the expansion of obscenity restrictions. The latest pronouncement of the Court bears out this view:

"But our opinion in *Miller* plainly indicates that we

rejected the *Memoirs* 'social value' formulation, not because it was so vague as to deprive criminal defendants of adequate notice, but instead because it represented a departure from the definition of obscenity in *Roth*, and because in calling on the prosecution to 'prove a negative,' it imposed a '[prosecutorial] burden virtually impossible to discharge' and which was not constitutionally required. *Miller v. California*, 413 U.S. at 22. Since *Miller* permits the imposition of a lesser burden on the prosecution in this phase of the proof of obscenity than did *Memoirs*, and since the jury convicted these petitioners on the basis of an instruction concededly based on the *Memoirs* test, petitioners derive no benefit from the revision of that test in *Miller. Hamling v. United States*, 418 U.S. 87, 41 L.Ed.2d at 620.

Chief Justice Burger's *Miller* opinion is far from the initiation of an epoch when pornographers may flaunt their figleaves. The trial court's overall instruction, conforming as it did to the *Roth-Memoirs* standard, was not erroneous.

By analogous reasoning, we conclude that the *Miller* court did not hold pre-existing obscenity law violative of first amendment protections. If the broader *Miller* restriction on obscenity did not encroach on constitutionally guaranteed freedom of expression, obviously the lesser *Memoirs* restriction did not:

"If a state law that regulates obscene material is ... limited [by the Memoirs' standard] as written or construed, the First Amendment values ... are adequately protected by the ultimate power of appellate courts to conduct an independent review of constitutional claims when necessary . . . ." *Miller*, 413 U. S. at 25.

### Due Process

In enacting its obscenity law, Maryland chose not to

define "obscene" but to permit courts to apply whatever definition the Supreme Court supplied from time to time, using the term, however, to describe that which is proscribed. *Cf., Dunn v. Md. Bd. of Censors*, 240 Md. 249. Similarly, the obscenity statute construed in *Roth* and *Hamling, supra*, 18 U.S.C. § 1461, left to the courts the delineation of proscribed depictions. We have held, *Donnenberg v. State*, 1 Md. App. 591, 605, as has the Supreme Court, *Hamling*, 418 U. S. 87, 41 L.Ed.2d at 617, that the use of that term gives adequate warning of the forbidden conduct and marks boundaries sufficiently distinct for judges and juries fairly to administer the law. While a more specific statutory definition may have been preferred by the *Miller* Court, it was not mandated. "We emphasize that it is not our function to prepare regulatory schemes for the states." *Miller* at 413.

Appellant acknowledges that we have decided the constitutionality of Md. Code, Art. 27, Sec. 418 but contends that doing so constituted a "judicial rewriting of the Maryland statute, and this court should have declined to do so." We now decline to review our decision for the reasons heretofore assigned. *Village Books, Inc. et al. v. State of Maryland*, 22 Md. App. 274 and *Ebert v. Md. St. Bd. of Censors*, 19 Md. App. 300.

### Sufficiency of the Evidence

Appellant contends that the magazines and movie are not obscene in the constitutional sense as a matter of law. Either appellant reviewed different material than did we or it refers to a different constitution. There is no purpose served by any of the evidence but to depict explicit, closely photographed scenes of ultimate and climactic acts of fellatio, cunnilingus, sodomy and an occasional more conventional act of sexual intercourse.

Appellant urges that two of the magazines colloquially characterized as "bondage" or "sado-masochistic abuse" magazines do not fall under the Miller guidelines because they "do not portray sexual conduct, and secondly they do

not portray (a) representations or descriptions of ultimate sex acts, normal or preverted, actual or simulated; (b) representations or depictions of masturbation, excretory functions, and lewd exhibition of genitals."

These two magazines are primarily devoted to pictures of perverted sex acts under simulated forced conditions. Every picture contains "lewd exhibitions of genitals," in various positions of exposition. In each case the genitals are accompanied by rope or chain binding the anatomy in their proximity, or by persons whipping or handling them. Some photographs show the internal insertion of objects, close-up images of genitals and persons of like sex titillating each other by coupling various parts of their bodies. The fact that these scenes happen to be accompanied by ropes and chains or leather-booted models does not redeem them any more than would any other stage prop.

Each of the exhibits is "hard-core pornography" which we have said:

> " . . . is material which focuses predominantly upon what is sexually morbid, grossly perverse and bizarre without any artistic or scientific purpose or justifications." *Levin v. State*, 1 Md. App. 139, *cert. denied*, 247 Md. 740.

When pornography is so "hard-core" that it revulses the prurient interest in sex that it was intended to stimulate, little can be said to describe it without using terms so crude as, to be themselves, "obscene."

*Judgment affirmed.*
*Costs to be paid by appellant.*